UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN W. HARWOOD, | ) | Case No.  5:07 CV 1383 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Kevin W. Harwood appeals the Social Security Administration's denial of disability insurance benefits under 42 U.S.C. §405(g) and seeks judicial reversal or remand for rehearing. At issue is the January 25, 2006 decision by an ALJ which became the final decision of the Commissioner following the Appeals Council's denial of request for review. See 20 C.F.R. §404.981. The parties have consented to the jurisdiction of the undersigned for entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

The ALJ found that prior to the expiration of Harwood's insured status he suffered bilateral pudendal nerve entrapment, bilateral Earnest syndrome (facial pain See Tr. 298-99) and tendinitis of the right shoulder. (Tr. 34). Harwood adds that he also had peroneal, scrotal and thigh pain, chronic facial neuralgia and edema and possible depression secondary to chronic pain. The medical advisor spoke of "pendial [phonetic] neuralgia" and facial pain (Tr. 435). Obviously this case concerns whether Harwood suffered debilitating pain.

5:07 CV 1383                                    2

The ALJ determined that Harwood had a residual functional capacity for light work with a

sit/stand option every 45 minutes with no more than occasional stooping or crouching, no ladder

climbing, operation of automotive equipment or work around moving/ hazardous machinery (Tr.

32,34). The ALJ found Harwood not disabled under the medical vocational guidelines of Appendix

2. (Tr 35). Harwood contends the ALJ's evaluation of his pain is legally insufficient and lacks

support of substantial evidence, and the medical advisor's testimony cannot be adequately reviewed

and requires remand.


*Substantial Evidence:*

The issues before this court must be resolved under the standard whether there is substantial

evidence in the record to support the Commissioner's decision.  Substantial evidence is more than

a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401

(1971). Substantiality is based upon the record taken as a whole.  *Barney v. Secretary of Health and

Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*,

736 F.2d 365 (6th Cir. 1984).  Substantial evidence is evidence that a reasonable mind would accept

as adequate to support the challenged conclusion.  *Casey v. Secretary of Health & Human Services*,

987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989);

*Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by
> substantial evidence, we must examine the evidence in the record 'taken as
> a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must
> take into account whatever in the record fairly detracts from its weight."
> *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.
> 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71
> S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)).  If it is supported by substantial

5:07 CV 1383                                          3

> evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Overview of medical evidence:*

Mr. Harwood suffered a rare condition of pudendal nerve entrapment, a point conceded by the medical advisor (Tr. 435). Harwood fell down a flight of wet stairs on September 7, 1998 and had increasing thoracic pain. Dr Boyles related in March 1999, that Harwood sought treatment because of "terrific sleep disturbances" where he could not sleep for four days and began hallucinating. (Tr. 147). Prescription of Trazodone at bedtime helped his sleeping and Dr Boyles' plan was to refer Harwood to a pain clinic for injection (*Id.*). Dr. Herbert reported in April 1999 that Harwood was much improved but still had pain in his right gluteus maximus.(Tr. 142) A nerve block provided relief for two days, and he"did become very active in doing things around the house when his pain was gone." (*Id.*). However, "bad pain" returned (Tr. 141, 243). Harwood described the pain as if a wolf were biting him. (Tr. 244). Harwood rated his pain from a 3 to 10 /10 when it "hits him hard." (*Id.*). Dr. Hunt's April 1999 examination revealed normal gait and station, ability to heel/toe walk, normal muscle tone and strengths, full range of motion, minimal tenderness on palpation of the upper though lower back, minimal tenderness with flexion, minimal tenderness of the piriformis sites of the buttocks, mild tenderness of the right ischial tuberosity with "definite muscle band" (Tr.

5:07 CV 1383                                    4

246). Dr. Hunt reported that sleep deprivation was under good control and suspected depression due

to chronic pain condition and being out of work. Dr. Hunt suspected torn fascia and found no frank

radicular symptoms and mild tenderness at the site.(Id.).  In September 1999 Dr. Hunt reported that

Harwood complained of pain with any activity and with sitting, and that most of the pain was focused

over the ischial tuberosities and inner groin. (Tr. 237). His impression now was myofascial type pain

in the buttock and groin and trigger point injections were administered with some relief (236-37).

About two weeks later in September 1999, Harwood rated his pain as 3/10, and trigger point

injections were tolerated well (Tr. 236). In October 1999, Harwood had significant and almost

complete relief of his groin pain (Tr. 235). There appears to be a gap in the record during 2000-2001

followed by Harwood admitting himself into Central Hospital University in Nantes, France for

surgery in December 2001 by renowned expert Dr. Robert (Tr. 125-135). Dr. Robert found severe

bilateral entrapment affecting the rectal, perineal and dorsal branches of the pudendal nerve. (Tr.

126). A surgical release was performed with an anticipated recovery in several months up to a year.

(Id..). The prognosis was that 47% of patents experienced complete or near complete relief of severe

pain when sitting. The record does establish that Harwood obtained some relief after this procedure,

(Tr. 179, 182, 183),  but reportedly relapsed by February 2003 with perineal, scrotal and thigh pain.

(Tr. 167, 169, 174).


       Dr. Pritchard treated Harwood's facial pain beginning in August 2002 with Neurontin and

Keppra, (Tr. 185) and later in December 2002 reported "pretty good relief" from pain with C2

blocks, although the doctor was puzzled by this success. (Tr. 182).    CT scan of the head revealed that

5:07 CV 1383                                    5

the styloid processes are not contiguous and could plausibly be secondary to avulsion of both styloid

processes from the skull base. (Tr. 136).[1]


The ALJ also considered right shoulder tendinitis, but the medical advisor had written that

this condition had an onset date of January 18, 2004, which was after insured status had expired (Tr.

396), and the findings concerning this impairment are not challenged.


*Credibility:*

Harwood's attack on the ALJ's pain analysis distills to an issue over credibility. Harwood

argues that  the determination regarding the extent and severity of his pain is not premised upon

appropriate legal standards and not supported by substantial evidence. Credibility determinations

track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*,

81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*,

127 F.3d 525, 531-32 (6th Cir. 1997); and see *Sadler v. Commissioner of Soc. Sec.*, 173 F.3d 429,

1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The

rule is,

> An individual's statements about the intensity and persistence of pain
> or other symptoms or about the effect the symptoms have on his or
> her ability to work may not be disregarded solely because they are not
> substantiated by objective medical evidence.

---

[1] **Styloid process** "A tusk-like bony projection from the underside of the temporal bone of the skull. It is about one-inch in length. It provides a place of attachment for the stylohyoid and stylomandibular ligaments, and for the tendons of the styloglossus, stylohyoid and stylomandibular ligaments, and for the tendons of the styloglossus, stylohyoid and stylopharyngeus muscles." 5 J.E. Schmidt, *Attorney's Dictionary of Medicine and Word Finder*, S-331 (2007)

5:07 CV 1383                                            6

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secty. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). The Commissioner has elaborated on this point requiring that the administrative decisions, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

The ALJ acknowledged SSR 96-7p (Tr. 30), found Harwood could perform a limited range of light work with a sit/stand option and concluded, "[a]ny further limitations would be out of proportion to the objective evidence of record." (Tr. 32). The ALJ then proceeded to state, " claimant's subjective complaints are disproportionate with and not supported by the objective and substantial evidence of record." (*Id.*).    Finally, the ALJ remarked Harwood had reported improvement after his December 2001 surgery but required pain medications including narcotics in September 2002, and the ALJ remarked that Harwood's condition had improved by physical therapy, rehabilitation and trigger point injections. The ALJ categorized these as "conservative medical treatment." (Tr. 32-33). However, it is difficult to understand how a cutting-edge surgical procedure performed in France is "conservative."

The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under

5:07 CV 1383                              7

20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Sec'y of Health & Human Services*,

801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir.

2007). Under the two-prong pain analysis, there first must be a determination whether there exists

an underlying medically determinable physical or mental impairment followed by the question

whether the impairment would be reasonably expected to produce the individual's pain or other

symptoms.  1996 WL 374186 at *2. There were underlying physical conditions for Harwood's groin

pain and facial pain documented by medical studies and objective medical evidence.


The second question then is the reasonableness of the alleged debilitating pain. The

regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or

other symptoms based on:

1.      The claimant's daily activities;

2.      The location, duration, frequency,  and intensity of pain;

3.      Precipitating and aggravating factors;

4.      The type, dosage, effectiveness, and side-effects of medication to alleviate
        pain or other symptoms;

5.      Treatment, other than medication claimant has received for relief of pain; and

6.      Any other measures used to relieve pain (e.g. lying down or changing
        position).

7.      Other factors concerning functional limitations and restrictions due to pain
        or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

5:07 CV 1383                                    8

The determination of the ALJ concluded its pain analysis at the threshold of the second prong, but stated only that the alleged pain was out of proportion to the medical findings. There was mention only of medical treatment, which led to an inaccurate conclusion that these were all conservative treatments and gave no consideration Harwood's allegation of pain from the record and from his testimony. Lacking is a specific discussion regarding daily activities, the location, duration, frequency, and intensity of pain, precipitating and aggravating factors, the type, dosage, effectiveness of medication and a specific reference to the record of how the ALJ determined that side-effects of medication to alleviate pain were not significantly limiting, and any other measures used to relieve pain (e.g. lying down or changing position). Consequently, these omissions result in incomplete consideration and a lack of specific reasons for the ALJ's finding on credibility to assess whether there was substantial evidence in the case record to support the rejection of disabling pain.

*Omissions in the transcript:*

The transcript has numerous "inaudibles" where the medical advisor mentions a medical term. The Commissioner argues that the suggestion that the inaudibles contained in the medical advisor's testimony create some sort of uncertainty about the extent of Harwood's pain lacks merit. This court is ordering remand, and if the Commissioner wishes to retain this incomplete transcript for use following remand, that is within the Commissioner's discretion. The prevailing argument presented to this court does not require review of the medical advisor's testimony.

*Remand:*

In this circuit, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of

5:07 CV 1383                                    9

disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). Evidence of disability is strongly subjective so the objective evidence is neither overwhelming nor one-sided, but unquestionably the decision fails to meet the requirements of SSR 96-7p and the associated regulations. Moreover, the ALJ's decision lacks a foundation of factual findings which would compel rejection of claimant's credibility under SSR 96-7p even though such findings were technically not contained in the decision. See *Blom v. Barnhart*, 363 F.Supp.2d 1041, 1055-56 & n. 16 (E.D. Wis. 2005). Accordingly remand under the fourth sentence of 42 U.S.C. §405(g) is required due to the inadequate evaluation within the administrative decision.


### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons based on the arguments presented and the medical record, the decision of the Commissioner denying disability insurance benefits is not supported by substantial evidence and is therefore reversed and remanded for reconsideration with special emphasis on reconsideration of allegations of disabling pain.


                                        _s/James S. Gallas_____
                                        United States Magistrate Judge

Dated: September 6, 2008